WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
3 Gannett Drive, White Plains, NY 10604-3407
Tel: 914.323.7000 Fax: 914.323.7001

*Albany • Baltimore • Boston • Chicago • Dallas • Garden City • Houston • Las Vegas • London • Los Angeles • McLean Miami • Newark • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Washington, DC • White Plains*
*Affiliates: Berlin • Cologne • Frankfurt • Mexico City • Munich • Paris*

www.wilsonelser.com

**Timothy P. Coon**
A Member of the Firm

**email address:**
Timothy.Coon@WilsonElser.com

February 4, 2009

Magistrate Judge A. Kathleen Tomlinson
U.S.D.C. – Eastern District
100 Federal Plaza, P.O. Box 9014
Central Islip, NY 11722-9014

Re: Scalera v. Electrograph Systems, Inc., et al
08 CV 0050
Our File No. : 10986.00001

Dear Judge Magistrate Tomlinson:

I am the attorney for defendants and submit this letter brief in opposition to plaintiff's application for an adverse inference charge against the defendants based upon alleged spoliation of relevant documents. Plaintiff has failed to submit by means of any credible evidence that defendants destroyed any relevant, responsive, non-privileged documents. Indeed plaintiff's assertions are primarily based upon the affidavit of Carolyn Reuter, a former Electrograph employee. An affidavit riddled with hearsay, speculation, conjuncture and falsehoods. As per this Court's directive Electrograph provided to plaintiff affidavits setting forth the processes in place at Electrograph to preserve electronically stored information and the efforts undertaken to preserve documents at the time Electrograph could have reasonably anticipated litigation. An objective view of the totality of the actions of Electrograph mandate a denial of plaintiff's application.

**ELECTROGRAPH'S PRESERVATION OF DOCUMENTS**

By the affidavits of General Counsel Jeanne Raffiani and Internal Support Manager, IT Department, Erich Liendo, (attached hereto and previously served on plaintiff's attorney) as well as the affidavit of Rose Ann Gordon, also attached, Electrograph has set forth how it managed its documents, including electronic documents. Plaintiff has sought documents relating to plaintiff's employment, termination, disability, requested accommodations, the July 2006 fall and her worker's compensation claim. As set forth in the affidavit of Rose Ann Gordon all documents in these categories would be sent to Human Resources as per company policy. If a document was sent in paper form it was placed in the appropriate employee's personnel file. If the document was sent electronically, it would be printed, placed in the personnel file then

deleted from the Human Resources computer. The paper document would then be scanned in a computer program DocStar which has been preserved to this day and produced to plaintiff's attorney. Ms. Scalera's entire personnel file was preserved and has been produced to plaintiff's counsel.

Plaintiff urges this Court to assume that there are numerous emails or other electronic documents pertaining to plaintiff. Such is simply not the case. Indeed all requests for accommodation, a higher desk chair and use of the side entrance are indeed documented in the Human Resources file. Defendants deny any other request for accommodations were made by plaintiff. In fact, plaintiff has failed to submit any evidence, other than speculative, conclusory hearsay of Carolyn Reuter that supports her allegation of additional requests for accommodation, for the simple reason that no such request for accommodation was ever made. As plaintiff states her disability, although improperly diagnosed and treated prior to January 2008, was evident at the time she was hired. It is important that Electrograph hired the plaintiff with her known disability. Once she was employed she requested an received the accommodation of a higher chair, she requested and received permission to park in the visitor's parking as it was closer to the entrance and she requested and received permission to enter and leave the building via the side entrance. No other requests for accommodations were made by plaintiff. In the absence of such request, there can be no documentation.

Electrograph had in place certain procedures and practices regarding computers and information stored on these computers. First, whenever an employee left Electrograph their computer was promptly removed by IT personnel and the hard drive is erased. Computers do not have identifiers that could permit identifying a specific computer with a particular employee. Plaintiff's last day of active employment was July 16, 2006. When co-employees went to her cubicle to retrieve her personal belongs they learned that everything had been removed before her accident. Plaintiff's leave ended on October 16, 2006 and her computer was removed and erased thereafter. It is beyond question that more than thirty days expired prior to Electrograph notice from the EEOC. Plaintiff's effort to somehow infer that Ms. Gordon's computer contained responsive emails is completely refuted by Ms. Gordon's affidavit and plaintiff offers nothing to rebut this. Any email relating to plaintiff on Ms. Gordon's computer was printed and placed in her personnel file which has been produced.

Electrograph had and continues to have in place a back up system for its email and electronic documents. Ms. Reuter's affidavit does not refute this back up system but rather incorrectly states that emails remain on a personal computer indefinitely. Emails that a user would see on their monitor were not on their computer but rather resided on the server itself. If such email remained on the screen without being deleted during the day it would be backed up by the system and stored on the back up tape. Additional steps were required to be taken by the employee in order to remove an email and have it stored on one's personal computer, and Ms. Reuter does not state she undertook such action.

Unfortunately the back up tapes for Electrograph's email system were corrupted and despite efforts and the retaining of an outside vendor (RDA) restoration has not been possible.

The letter from RDA, setting out the efforts it took to restore emails has been previously submitted in the Court.

**ELECTROGRAPH'S EFFORTS TO PRODUCE**

As stated by Jeanne Raffrani, (See Delcaration of Jeanne Raffiani attached hereto) when she became aware of Ms. Scalera's EEO claim she contacted the individuals employed at Electrograph who would have had dealings with the plaintiff. However, a number of these individuals, Joe Koos, Paul Batterson and others in the computer programming area had long since left the company and their computers were not available. However, in-house counsel did contact other key employees and obtained a complete copy of plaintiff's personnel file. Ms. Raffiani also learned that all documents were kept in the Human Resources file and she obtained a copy of the entire file. Ms. Raffiani learned that Electrograph backed up its computer systems and was confident that should any relevant documents not found in the Human Resources file would be preserved on the back up tapes. Clearly, Electrograph undertook to locate and preserve the relevant and responsive documents. In fact, after initial production of the Human Resources file to the EEOC, there was no request from EEOC for any additional documents, which would lead Electrograph to believe it had complied with its obligations to preserve documents.

**PLAINTIFF'S ATTEMPTS TO ARGUE THE MERITS**

Defendants do not agree with many of the statements contained in the "Factual Background". Indeed, many of the statements are founded on the hearsay submission of Carolyn Reuter. For example Reuter states that Scalera told her that she requested the installation of a handrail to Rose Ann Gordon, obviously inadmissible hearsay. Ms. Gordon denies such request was ever made. (See Gordon declaration) While Scalera did state in her letter of August 7, 2006 that she fell due to the absence of a handrail, her letter does not make any reference to any request on her part that a handrail be installed prior to her fall. These are but two of the disputed issues between the parties.

Electrograph's after incident conduct is not admissible to prove negligence or other culpable conduct. Indeed Electrograph has never admitted that had there been a handrail in place, Scalera "might not have fallen." The stair in question is depicted in the photograph submitted herewith (00001248). There is one stair from the door level to the sidewalk. There has never been a handrail at this lodation. Indeed the issue is not the existence or non-existence of a handrail, rather it is whether Scalera ever requested, as an accommodation, the installation of a handrail. That such a request was made is vehemently denied by the defendants.

Obviously plaintiff attempts to color the Court's judgment by referencing factual allegations that have no bearing on the limited issue before this Court. The "Dclaration" of Carolyn Reuter underscores such an attempt. This "declaration" is 5 pages in length and 35 paragraphs. The initial 32 paragraphs and more than 4 pages consist of nothing more than hearsay, conclusions and speculation on a host of factual allegations that have nothing to do with whether Electrograph fulfilled its obligations to preserve documents. Perhaps most telling to

Reuter's truthfulness or ability to accurately recall events is found in paragraph 29 where she states that Scalera fell "one night in July 2006." The time of the accident was approximately 1:15 pm, during lunch hour, and Reuter was present helping Scalera down the stares when she fell. (See ES000000141, 142). This obvious falsehood should compel this Court to disregard Reuters' declaration in its entirety.

**LEGAL ARGUMENT**

During our conference with the Court, the parties were asked to provide the Court its analysis of the plaintiff's application under Toussie v. County of Suffolk, 2007 US District LEXIS 93988. "A party seeking an adverse inference charge must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to a party's claim or defense such as reasonable time of fact could find that it would support that claim or defense.' (emphasis added) Zubulake v. UBS. 229 F.R.D.422 (SDNY 2004). These elements presuppose that documents have been destroyed. There is no such evidence of destruction presented in this case.

**ANTICIPATION OF LITIGATION**

Electrograph first anticipated litigation regarding any claim of discrimination when it received the Notice of Claim from the EEOC. This notice dated November 16, 2006 was received in late November or early December 2006.

Plaintiff, attempting to move this date to an earlier point in time, argues that (a) a letter to the landlord from an attorney making a claim for negligence in maintaining the stair and personal injury or (b) plaintiff's retention of a lawyer to represents her in her worker's comp claim, somehow put Electrograph on notice. Such argument completely misses the mark. A negligence claim for a faulty step against the landlord did not and cannot give notice of discrimination claim. Legal obligations and duties are distinct for each claim. Further the negligence claim was asserted against the landlord and not Electrograph, which would, contrary to plaintiff's argument herein, evidence that plaintiff was making no claim against Electrograph. Similarly plaintiff's submission of a worker's comp claim and retaining an attorney for worker's comp, an employee's exclusive remedy in New York, also leads to a conclusion that there would be no claim by plaintiff for discrimination. Plaintiff filed her worker's compensation claim in July 2006 while she was still with Electrograph (See ES00000137) without any mention or reference to discrimination.

Any obligation on Electrograph to retain documents arises no earlier that its receipt of the EEOC Notice of Claim in late November or early December 2006.

**DUTY TO PRESERVE**

As stated by Rose Ann Gordon, it was Electrograph company policy that any document

pertaining to an employee's employment, termination, disability, request for accommodation, in the job accident or worker's compensation claim must go to Human Resources. The entire Human Resources file has been produced to plaintiff's counsel. In addition to the paper file, documents are scanned and stored in a computer program DocStar. The documents were retained and remain unaltered and unchanged within the Electrograph computer system. As such these are preserved and have been produced to plaintiff in paper form.

The duty to preserve documents is limited to those documents that are "unique" and "relevant" evidence. Zubalake. These categories of documents are within Human Resources and have been preserved in both written and electronic form. The courts do not impose upon a party the manner in which to preserve electronic data, nor should this court punish Electrograph for its chosen method of preservation. The relevant documents have been preserved in Human Resources, in paper form and in DocStar.

Plaintiff attempts to create an issue with respect to email preservation speculating as to potentially lost emails during a small window of time. The affidavit of Erick Liendo sets forth how the email system was, during all relevant times, backed up. The electronic data created or secured at Electrograph is backed up daily. (See Liendo ¶4). This means that at the end of each business day all electronic data then existing on the network is backed up to tape. When Electrograph came to understand that Scalera had commenced an EEO claim, the email system and other electronic data was preserved by means of back-up tape. It must be noted that emails pertaining to Scalera's disability or request for accommodation were sent to Human Resources where they were printed and filed in Scalera's personnel file and electronically preserved to DocStar.

The obligation to preserve evidence runs "first to counsel who [has] a duty to advise her client of the type of information potentially relevant to the lawsuit and the necessity of preventing its destruction. Turner v. Hudson Transit Lines, Inc., 142 F.R.D. at 73 (S.D.N.Y. 1991) When Electrograph just received notice of plaintiff's EEO claim Ms. Raffiani, acting as General Counsel, undertook to comply with the duty to preserve documents. Ms. Raffiani reached out to the employees who would likely have relevant information, to obtain and preserve the Human Resources file, and discussed with the IT department to determine that electronic information was backed up. Clearly counsel undertook and performed to obligation to preserve relevant documents.

Given the various means utilized by Electrograph to preserve this "relevant" information, it is respectfully submitted that there can be no finding of destruction.

**CULPABLE STATE OF MIND**

A party's failure to comply with an obligation to preserve evidence is insufficient by itself to support an adverse inference charge, the spoliator must also have acted with a culpable state mind. Residdential Funding Corp. v. DeGeorge Financial Corp., 306 F.2d Cir. 2002) Electrograph denies that it failed to preserve evidence and further that it acted in a manner other

than good faith.

Jeanne Raffiani, upon learning of plaintiff's filing of an EEO claim proceeded to Human Resources to discuss relevant documents and determine where these documents were located. Ms. Raffiani obtained a copy of the entire Human Resources file so that these documents could be preserved. She also learned that all documents relating to Scalera's employment, termination, disability, work related accident and worker's compensation were to be in Human Resources. However, Ms. Raffiani also spoke with Kathy Kozoil and Allan Smith in her attempt to gather all relevant documents. Therefore as general counsel she believed that she had complied with the requirements of a litigation hold which is meant to preserve all relevant documents.

Ms. Raffiani also investigated Electrograph's computer back-up policy through discussion with Erich Liendo. Upon learning that the email system and electronic documents are backed up daily, Ms. Raffiani believed that Electrograph had indeed preserved all relevant documents. A "litigation hold" is a party's obligation to affirmatively prevent the destruction of information, even if such destruction would have occurred in the regular course of business. Clearly the actions of Ms. Raffiani were designed to insure the retention of information.

Again plaintiff has failed to establish that any documents were destroyed, a cornerstone to her application, that is absent herein. There is no question that Ms. Raffiani met with key employees to explain the need to retain relevant documents. Further these employees were not free to delete such documents as (1) the entire Human Resources file was with General Counsel and (2) employees did not have access to the back-up tapes.

**RELEVANCE**

Defendants have produced emails pertaining to plaintiff's request for an accommodation in the form of a different style desk chair and the use of the side entrance. Plaintiff's requests, were granted. These emails are similar to the six emails in Troussie where the court found that such emails did not support plaintiff's claim but rather supported defendants' position. So too here. The emails show that in those circumstances where plaintiff requested an accommodation, Electrograph granted it. There is no reason to suspect that a request, if made, for a raised toilet seat could have been denied especially in light of the refurbishing of the women's room. Similarly with the installation of a handrail at the outside step. Electrograph hired plaintiff with a known disability and provided her with the requested reasonable accommodations. It is incomprehensible that Electrograph would have denied her these two requests had they been made. These produced emails support the defendants' position that her requests for accommodation were granted, and there is no reason to believe that any "other emails" would support plaintiff's position that additional requests were ignored or denied.

To: Magistrate Judge A. Kathleen Tomlinson
February 4, 2009
Page 7

**CONCLUSION**

It is respectfully submitted that plaintiff did not nor cannot establish the three elements so as to be entitled to an adverse inference charge.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

Timothy P. Coon

TPC:ml

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

2257047.1

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn: Timothy P. Coon (TC 3357)
Lalit K. Loomba (LL 9755)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY KAY SCALERA,<br>Plaintiff,<br>-against-<br>ELECTROGRAPH SYSTEMS, INC. KATHY KOZIOL, ROSE ANN GORDON, AND ALAN SMITH,<br>Defendants. | ECF Case<br>08 Civ. 0050 (TCP) (AKT)<br>**DECLARATION** |

JEANNE RAFFIANI hereby declares, under penalty of perjury, pursuant to 28 U.S.C. §1746 as follows:

1. I am General Counsel at defendant Electrograph Systems, Inc. ("Electrograph or the Company"), a position I first held in August 2006. Ms. Scalera left the active employment at Electrograph in July 2006, prior to my joining the Company.

2. In late November or early December 2006 I received the EEOC Notice of Charge of Discrimination pertaining to Mary Kay Scalera. This was the first time that I considered Ms. Scalera would take legal action against Electrograph on allegations of discrimination.

3. Attached to the Notice of Charge of Discrimination I also received from the EEOC Information on Charges of Discrimination and Document Retention Notice Pursuant to

Charge of Discrimination. I carefully reviewed these notices and endeavor to comply with such requirements by contacting those at Electrograph who would have interacted with Ms. Scalera.

4. After reviewing the EEOC documents on retention requirements I spoke to those employees who would have dealt with Ms. Scalera while she was employed at Electrograph. I spoke to Rose Ann Gordon, Kathy Kozoil, Alan Smith, Paul Batterson, Carol Dinow and Erich Liendo. When I spoke to these individuals I inquired as to their knowledge of the claim made by Scalera and whether they had documents relative to her claim. I informed each person to retain any relevant documents. I collected copies of documents from Human Resources, where I believed all relevant documents would be kept. When I spoke to Erich Liendo or David Thompson (former CIO) I was told that all documents, including emails were backed up and that Electrograph did not have a document destruction policy. Knowing of these back-ups in place, I was confident that Electrograph had retained the necessary documents.

5. As General Counsel my efforts were to comply with the EEOC requirements for document preservation. It was my understanding that the responsive and relevant documents would be in the HR files, this is where I focused my attention. I obtained a full and complete copy of the HR file for Mary Scalera.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 12, 2009

Jeanne Raffiani



2/04/09 WED 13:08 FAX 631 2629758

631 2629758

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn: Timothy P. Coon (TC 3357)
Lalit K. Loomba (LL 9755)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY KAY SCALERA, Plaintiff,<br><br>-against-<br><br>ELECTROGRAPH SYSTEMS, INC. KATHY KOZIOL, ROSE ANN GORDON, AND ALAN SMITH,<br><br>Defendants. | ECF Case<br><br>08 Civ. 0050 (TCP) (AKT)<br><br>DECLARATION |

ROSE ANN GORDON, being duly sworn deposes and says:

1. I am the former Director of Human Resources at ELECTROGRAPH SYSTEMS, INC., and a defendant herein.

2. I retired from ELECTROGRAPH SYSTEMS, INC. in January, 2007.

3. As Director of Human Resources I maintained the personnel files for all employees at the Hauppauge offices. These files were maintained in paper form. All materials received via email or other electronic means in Human Resources were promptly printed and placed in the appropriate employee's file. In addition to the paper file Human Resources also used a computer system called DocStar. My assistant would scan the paper documents into this

program by employee file. Once a document is scanned into DocStar it is not deleted or altered in any fashion. The contents of the paper file and the DocStar file are identical.

4. It was Electrograph company policy during my tenure at Human Resources that all documents relating to one's employment, termination, disability, requested accommodations, workplace accidents and workers compensation claims be delivered to and maintained in Human Resources.

5. Any employee request for accommodation for any reason had to be made through Human Resources. When Ms. Scalera was at Electrograph, she requested a desk chair that was higher than normal. This accommodation was granted and a higher chair that she selected was purchased. Ms. Scalera also asked if she could use the side entrance to come and go. The entrance which previously had unrestricted access to all employees was about to become restricted for emergencies. However, Electrograph allowed Ms. Scalera to use the side entrance as an accommodation. I was aware of co-employees assisting Ms. Scalera at various times as she walked to and from her car. Electrograph permitted her to park in the designated visitor space in order to shorten the distance between her car and the office. Any accommodation requested by Ms. Scalera was granted during her time at Electrograph.

6. I have read the affidavit of a former Electrograph employee Carolyn Reuter. Ms. Reuter was a programmer at Electrograph who left Electrograph under less than ideal circumstances. I vehemently deny Ms. Reuter's claim that Ms. Scalera, either directly or through another employee ever requested that a handrail be installed on the step (single step) outside the side entrance. Any such request for accommodation would come to Human Resources.

7. I also want to point out that Ms. Scalera's accident occurred at the lunch hour. Ms. Scalera had told me that she was going out to perform work on her resume. I recall this because Ms. Scalera seldom went out for lunch.

8. In February 2006 the women's room was refurbished. The floor plan remained precisely the same after the refurbishing. Before the project there was an assist bar in one of the stalls, so to after the project was complete there was an assist bar in the same stall. At no time did Ms. Scalera make any request for an accommodation to the women's room, including any request for a raised toilet seat.

9. The entire file on Ms. Scalera as maintained by Human Resources was copied and provided to Jeanne Raffiani, General Counsel at Electrograph.

I declare under penalty of perjury that the foregoing is true and correct.

Rose Ann Gordon

Dated: February 4, 2009

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn: Timothy P. Coon (TC 3357)
Lalit K. Loomba (LL 9755)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY KAY SCALERA,<br><br>Plaintiff,<br><br>-against-<br><br>ELECTROGRAPH SYSTEMS, INC. KATHY KOZIOL, ROSE ANN GORDON, AND ALAN SMITH,<br><br>Defendants. | ECF Case<br><br>08 Civ. 0050 (TCP) (AKT)<br><br>**AFFIDAVIT OF ERICH LIENDO** |

ERICH LIENDO, being duly sworn deposes and says:

1. I am employed at defendant ELECTROGRAPH SYSTEMS, INC., in the position of Internal Support Manager, IT Department. I have held this position since September 2005.

2. My duties as Electrograph's Internal Support Manager include: (a) support end users regarding all IT needs and functions (ex: email, desktop support); (b) maintain network infrastructure; and (c) maintain and manage software management and hardware topology.

3. In early 2007, I became aware of the above-captioned litigation brought by Mary Kay Scalera. Upon learning of the litigation, I determined that electronically stored information ("ESI") created, received or sent out by employees at Electrograph was preserved on back-up tapes stored off-site. These back-up tapes are designed to be used solely for disaster recovery

should such an event occur at Electrograph. Accordingly, information on the tapes is accessible, but only after the tapes are "restored." Certain back-up tapes contain e-mail. Others contain data, including documents, letters, memos, spreadsheets and other data in Word, Excel, Powerpoint, payroll, cove and other software programs used by Electrograph.

4. In addition to ESI, which is backed up on a daily basis, documents can be stored locally on the hard drives of individual computers assigned to specific employees at Electrograph. Such documents may or may not also be backed up as "ESI," depending on whether the document was created on the network or only locally at a particular end-user's computer.

5. In order to determine whether Electrograph might be in possession of documents relevant to the case, but not stored as ESI, I searched or caused to be searched the hard drives for computers assigned to the individually-named defendants who are currently employed at Electrograph (Kathy Koziol and Alan Smith) looking specifically for documents containing the specific word "Scalera." Copies of any responsive documents located were forwarded to counsel.

6. I also searched the hard drive of a current Electrograph employee named Elaine Capel for documents pertaining to Ms. Scalera. Ms. Capel is referenced in plaintiff's document request #7. Copies of any responsive documents located were forwarded to counsel.

7. Regarding former employees of Electrograph, including Rose Ann Gordon and Ms. Scalera herself, a search of local hard drives was not possible. This is because computers at Electrograph are not tagged or otherwise catalogued. Hence, after an employee's workspace is cleared, it is generally not possible to track a given computer to a specific prior employee. In addition, once an employee leaves Electrograph, all data on the hard-drive of the computer

assigned to such employee is removed. For "executive" employees, this occurs as a matter of course within 30 days of the last day of employment. For "non-executive" employees, data on the hard drive is removed immediately prior to the computer being re-assigned to another employee at the company.

8. I understand that Ms. Scalera worked at Electrograph from September 2005 through October 11, 2006. During that time frame I am unaware of any document retention policy at Electrograph. However, as noted above, ESI was and is backed up daily.

9. During Ms. Scalera's employment, Electrograph's email software/system was Novell. In early 2007, Electrograph changed its email software/system from Novell to Microsoft Exchange. When Electrograph's attorneys requested a review of emails during the relevant time period, I knew that this review would require the use of an outside vendor as we no longer had Novell software licenses necessary to review backed up emails created or received during the relevant time frame.

10. We hired an outside vendor named RDA Enterprises, Inc. ("RDA") to attempt to perform a review of backup tapes containing e-mails on the Novell system which were sent or received during the period of Ms. Scalera's employment with Electrograph. The results of RDA's efforts, which were not successful, were set forth in the letter of October 31, 2008, which I understand has already been provided to the Court. Electrograph has been advised that the cost of RDA's efforts will be approximately $3,000 (we have not yet received their invoice).

11. As noted above, Electrograph backs up server-stored data on a daily basis for recovery in case of disaster. Documents stored include e-mails, currently maintained on the Microsoft Exchange system, and data (letters, memos, reports and spreadsheets and other documents). Approximately 50 back-up tapes are created in any given year.

12. In order to search a back-up tape to determine if there are documents relating to Ms. Scalera, it would be necessary to bring the tape online (*i.e.*, restore the tape), and search each restored tape for a specific date, word and file type (*e.g.*, Word, Excel, Microsoft e-mail). Please note that, in order to search the *body* of e-mails maintained on the Microsoft Exchange system, it would be necessary to purchase new software at an estimated cost $2485. In addition, a word search of any common word -- other than, for example, Scalera's name -- would yield a volume of ESI that would not be reviewable in any reasonable time frame.

13. Each step described above could take several hours per tape depending on how much ESI is located.

14. Using the narrow criteria set forth above, to restore and search each back-up tape would require one or two employees to devote a minimum of 1 week of 8 hour days (40 hours). There are only four persons within the 11-person IT Department of Electrograph with the expertise to do this work. These four people are located in three separate locations (NY, CA and WA). All IT personnel at Electrograph are dedicated on a full-time basis to keeping the company's systems running. It is not possible for one of us to undertake this task without severely and negatively impacting the day-to-day operations of the company, particularly given the difficult economic realities that we are all currently dealing with.

15. I have requested outside vendors to provide me with a budgetary range for temporary employees to perform the task of restoring back-up tapes and searching for documents pertaining to Ms. Scalera. The estimates that I have received range between $30 and $60 an hour for these services.

Respectfully submitted,

Erich Llendo

Sworn to before me this
12th day of January 2009

Notary Public

NEIL A. GOLDBERG
Notary Public, State of New York
No. 01GO6034162
Qualified in Suffolk County
Commission Expires December 6, 2009

Scalera v. Electrograph Systems, Inc. et al.
00001248

Redacted