**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MARY KAY SCALERA,

                    Plaintiff,

       - against -

ELECTROGRAPH SYSTEMS, INC.,
KATHY KOZIOL, ROSE ANN GORDON,
AND ALAN SMITH,

                    Defendants.
-----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 08-50 (TCP) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     **PRELIMINARY STATEMENT**

      Before the Court is Plaintiff Mary Kay Scalera's motion seeking sanctions, in the form of

an adverse inference instruction, against Defendants Electrograph Systems, Inc. ("Electrograph"),

Kathy Koziol, Rose Ann Gordon, and Alan Smith (collectively, "Defendants") for spoliation of

evidence [DE 38]. Defendants have opposed the motion [DE 39] and Plaintiff submitted a reply

in further support of her motion [DE 41]. In addition, the parties appeared before the Court and

presented extensive oral argument in support of their respective positions. For the reasons set

forth below, Plaintiff's motion for sanctions is DENIED.

II.     **BACKGROUND**

      A.     **The Amended Complaint**

      Plaintiff commenced this action by filing the original Complaint on January 4, 2008. She

subsequently filed an Amended Complaint on September 30, 2008 [DE 23]. Plaintiff brings

causes of action under the Americans with Disabilities Act of 1991 ("ADA") and the New York

Human Rights Law ("NYHRL") based upon Defendants' alleged failure to accommodate her

disability.  Plaintiff asserts that since about 1995, before she became employed by Defendants, she has suffered from "noticeable muscular weakness."  Am Compl. ¶ 18.  The muscular weakness continued throughout the time she was employed by Defendants and had been initially diagnosed as muscular dystrophy.  The diagnosis was eventually revised to Pompe disease.  *Id.* ¶¶ 19-20.  Plaintiff suffers from "muscle weakness and damage" as well as "limited mobility" in that she has difficulty walking, bending, twisting, reaching, and walking up or down stairs.  *Id.* ¶ 21.

Plaintiff claims that she is disabled within the meaning of the ADA and the NYHRL.  *Id.* ¶ 23.  Plaintiff further alleges that during her employment (which commenced in approximately September 2005 and was terminated on October 11, 2006), she requested two reasonable accommodations which Defendants failed to provide.  First, Plaintiff claims that Defendants failed to install in the restroom a raised toilet seat suitable for use by handicapped individuals.  *Id.* ¶¶ 29-35.  According to Plaintiff, her use of the non-handicapped-accessible toilet seat left her suffering "non-operable, left-sided flank pain and experienc[ing] serious pain along her left side."  *Id.* ¶ 35.  Second, Plaintiff alleges that Defendants failed to accommodate her request for a handrail on the two steps leading out of the side door of the building, which was the only door Plaintiff could use to enter or exit the building due to her medical condition.  *Id.* ¶¶ 36-51.  On July 13, 2006 "due to the absence of a handrail," Plaintiff states that she fell while exiting the side door of the building.  *Id.* ¶ 45.  The fall purportedly caused "grave injuries" to Plaintiff's spine as well as "radicular back pain and bladder and bowel symptoms."  *Id.* ¶ 46.  Plaintiff also maintains that the fall "further worsened Ms. Scalera's left-sided flank pain and resulted in increased muscle weakness."  *Id.*

Plaintiff alleges that she made "two separate requests" for a raised handicapped toilet seat to Defendant Kathy Koziol, who is identified as "the Director of Operations." *Id.* ¶ 31. According to Plaintiff, Defendant Koziol told her "that the main women's bathroom would be renovated in February 2006 and that it would be made handicapped accessible," which, according to Plaintiff, did not happen. *Id.* ¶¶ 32, 34. With respect to Plaintiff's request for a handrail outside the side door, Plaintiff asserts in the Amended Complaint that after her interview for the job (but before she was officially hired), Joe Koos, the "Director of Information Technology," told Plaintiff that "Electrograph should install a handrail if they hired Ms. Scalera. Plaintiff agreed with him." *Id.* ¶ 36. Plaintiff alleges that she specifically requested the installation of a handrail in November 2005 – after she began her employment – by speaking to Defendant Rose Ann Gordon, the Director of Human Resources. *Id.* ¶ 41. Defendant Gordon allegedly replied that "'she would see if it posed a hardship and would get back to Ms. Scalera,'" but no handrail was ever installed. *Id.* ¶¶ 41-42. Plaintiff states that she made another request to Defendants to install the handrail in March 2006, but that this request was not acted upon. *Id.* ¶ 42.

**B.** **Facts Giving Rise to the Instant Motion**

On August 13, 2008, Plaintiff served her First Request for Production of Documents upon Defendants, which included requests for (1) all emails sent or received by Electrograph employees regarding Plaintiff's medical condition, (2) all emails sent by Electrograph employees regarding Plaintiff's request or need for any accommodation for her medical condition, (3) all emails sent on Electrograph's "Inter-Office email system" to and from Plaintiff from 2005 to the present, "including any emails predating Plaintiff's employment." *See* Pl.'s Mot., Ex. E at 15-16.

Plaintiff also requested all "backup and/or archive (computer) data which was generated by Defendants" and related to Plaintiff's employment. *Id.* at 17.

According to Plaintiff, Defendants produced only "a handful of emails relating to Ms. Scalera, maintaining that the emails were stored on backup tapes and that these tapes are corrupted and could not be restored." Pl.'s Mot. at 3-4. Specifically, on November 4, 2008, Defendants' counsel sent Plaintiff's counsel a letter stating that Electrograph had retained an outside vendor to restore the electronic data contained on the backup tapes. Pl.'s Mot., Ex. F. A copy of a letter from RDA Enterprises, Inc. (the outside vendor retained by Defendants) was attached to defense counsel's letter. The vendor's letter summarizes the steps the outside vendor took to attempt to restore the data contained on Electrograph's email backup tapes. According to the outside vendor, Defendants provided RDA Enterprises with a total of sixteen backup tapes. First, the vendor ran an inventory process to see if the tapes "met the criteria with restorable data." *Id.* Only two of the tapes met that criteria. *Id.* However, the vendor was not able to restore the data on either of those two email backup tapes. *Id.* Plaintiff argues that Defendants' loss of this information amounts to spoliation and, as a result, the Court should impose sanctions in the form of an adverse inference against Defendants. Pl.'s Mot. at 5.

## III. THE PARTIES' CONTENTIONS

The parties' arguments mirror the analytical framework articulated by the court in *Toussie v. County of Suffolk*, 2007 WL 4565160, at *6 (E.D.N.Y. Dec. 21, 2007), which sets forth the three elements that must be shown by a party seeking sanctions for spoliation. A party seeking an adverse inference instruction as a sanction for the spoliation of evidence must establish that: (1) "the party having control over the evidence had an obligation to preserve it at the time it was

destroyed," (2) "the records were destroyed with a 'culpable state of mind,'" and (3) "the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

### A.     Duty to Preserve

#### 1.     When Did the Duty to Preserve Arise?

As to the first element, Plaintiff argues that Defendants had a duty to preserve the destroyed information and also asserts various theories as to when this duty attached.  First, Plaintiff contends that Defendants' obligation to preserve the information arose immediately following Plaintiff's July 13, 2006 fall down the steps outside Electrograph's side entrance  Pl.'s Mot. at 6.  According to Plaintiff, Electrograph's July 14, 2006 accident report acknowledges that "had a railing been installed, Ms. Scalera might not have fallen." *Id.*  Plaintiff maintains that if Defendants were aware of Plaintiff's disability,[1] Defendants had a duty to accommodate that disability – "which would include installing railings, where necessary." *Id.* (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)).  Thus, Plaintiff asserts that if her injury was caused by the absence of the railing, "Defendants should have known that they were potentially liable for failing to accommodate Ms. Scalera's disability." *Id.* at 7.  Thus, according to Plaintiff, immediately following her July 13, 2006 accident, Defendants knew or should have known that some of their internal employees' emails would be relevant to a potential litigation and that Electrograph therefore was under a duty to preserve those emails.

---

[1]     The Court's use of the word "disability" throughout this Memorandum and Order does not constitute a judgment as to whether Plaintiff's medical condition constitutes a "disability" as that term is defined under the ADA or the NYHRL.

Second, Plaintiff argues that "within two weeks of Ms. Scalera's fall, she had hired an attorney and filed for worker's compensation." *Id.* According to Plaintiff, because Defendants knew about Plaintiff's pending worker's compensation case, "Electrograph was under a duty to retain documents relating to Ms. Scalera's disability and injury." *Id.*

Third, Plaintiff contends that "even if litigation was not reasonably foreseeable to Defendant[s] . . . Defendant[s] had a duty to retain all documents relating to Ms. Scalera's employment, disability and requests for accommodations, pursuant to ADA regulations. *Id.* (citing 29 C.F.R. § 1602.14). Plaintiff relies on the Second Circuit's decision in *Byrnie v. Town of Cromwell Board of Education*, which states that: "[W]here, as here, a party has violated an EEOC record-retention regulation, a violation of that regulation can amount to a breach of the duty necessary to justify a spoliation inference in an employment discrimination action." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001). Finally, Plaintiff claims that "even if the Court were to find that Electrograph did not have an obligation to retain relevant documents at the time of Ms. Scalera's injury, it is clear that Electrograph had actual knowledge of the likely litigation no later than November 2006, when Ms. Scalera filed her EEOC Charge." Pl.'s Mot. at 8.

In opposing the motion, Defendants contend that "Electrograph first anticipated litigation regarding any claim of discrimination when it received the Notice of Claim from the EEOC," which was sometime in late November or early December 2006. Defs.' Opp'n at 4. Defendants argue that a letter sent by Plaintiff's attorney to the *building landlord* – not Electrograph – "making a claim for negligence in maintaining the stair and personal injury" did not put Electrograph on notice that Plaintiff intended to bring a discrimination claim against the

company.  *Id.*[2]  Defendants also maintain that "plaintiff's submission of a worker's comp claim

and retaining an attorney for worker's comp, an employee's exclusive remedy in New York, also

leads to the conclusion that there would be no claim by plaintiff for discrimination."  *Id.*

Defendants add that Plaintiff's worker's compensation paperwork was filed in July 2006 and

does not make any reference to discrimination.  *Id.* (citing Pl.'s Mot., Ex. A at ES 000000137).

## 2.  The Information Allegedly Destroyed

Plaintiff asserts that only a "handful of emails" were produced by Defendants when, by

her own account, Plaintiff "regularly utilized [her] email to communicate with coworkers and

supervisors at Electrograph" during the tenure of her employment.  This fact demonstrates on its

face, according to Plaintiff, that Defendants have failed to produce numerous emails sent or

received by Plaintiff.  *See* Reply at 3; Decl. of Mary Kay Scalera ("Scalera Decl.") ¶¶ 2, 4.

During oral argument, Plaintiff's counsel highlighted a statement made by one of Plaintiff's co-

workers, Carolyn Reutter, that emails she received on her Electrograph email system "would stay

in [her] inbox . . . unless [she] deleted it or the technical support employees purged the emails,"

and that this apparently only happened "once every couple of years."  *See* Decl. of Carolyn

Reutter ("Reutter Decl.") ¶¶ 34, 35.  Moreover, Erich Liendo, the Internal Support Manager of

Electrograph's IT department stated that "documents can be stored locally on the hard drives of

individual computers assigned to specific employees at Electrograph," and that such documents

---

[2]     As far as the Court can tell, Plaintiff does not address this letter in her moving papers.
During oral argument, Defendants' counsel indicated that the letter was dated August 7, 2006
and was Bates-stamped as Document 134.  Although there is a document attached to Plaintiff's
moving papers that is dated August 7, 2006 and is Bates-stamped ES 000000134, that letter
appears to be a communication from Plaintiff (not her attorney) to Defendant Rose Ann Gordon
(not the building landlord).  *See* Pl.'s Mot, Ex. A.

7

"may or may not also be backed up as 'ESI,' depending on whether the document was created on the network or only locally at a particular end-user's computer." Aff. of Erich Liendo ("Liendo Aff.") ¶ 4. Given all of this information, Plaintiff concludes that there must have been relevant emails exchanged between Electrograph employees in the relevant time period that were not produced by Defendants.

Plaintiff points to specific examples of documents produced during discovery which Plaintiff claims demonstrate the existence of certain emails that Defendants failed to produce. For example, Defendants produced the second pages of two different emails "concerning Ms. Scalera's disability and resulting injury" but did not produce the first pages. *See* Pl.'s Mot., Ex. A at 000000341, 000000342. Moreover, Plaintiff points out that one of those emails is clearly a "string email," but Defendants did not "produce the underlying email correspondence." Reply at 3; Pl.'s Mot, Ex. A at 000000341. Furthermore, Plaintiff asserts that although Defendants touted their production of emails regarding their provision of a raised chair to Plaintiff as an accommodation for her physical condition, Defendants never actually produced any such emails – the only emails in the record regarding this topic were produced by Plaintiff. Reply at 3; Pl.'s Mot., Ex. D at 00635-637. Thus, according to Plaintiff, these documents demonstrate that additional emails did exist at one time but were never produced by Defendants.

Next, Plaintiff claims that the hard drive on the computer of Defendant Rose Ann Gordon, the former Director of Human Resources for Electrograph, was wiped clean. Reply at 3-4. According to Defendant Gordon's Declaration, she maintained all employee personnel files and "[a]ll materials received via email or other electronic means in Human Resources were promptly printed and placed in the appropriate employee's file." Decl. of Rose Ann Gordon

("Gordon Decl.") ¶ 3.  In addition, Defendant Gordon claims that all documents in the personnel file were scanned into a computer program called DocStar.  *Id.*  Human Resources maintained "all documents relating to one's employment, termination, disability, requested accommodations, workplace accidents and workers compensation claims," according to Defendant Gordon  *Id.* ¶ 4. In addition, "[a]ny request for accommodation for any reason had to be made through Human Resources."  *Id.* ¶ 5.  Defendant Gordon denies that Plaintiff (or any other employee on her behalf) ever requested that a handrail be installed on the steps outside the side door of the building – "[a]ny such request for accommodation would come to Human Resources."  *Id.* ¶ 6.

Plaintiff notes that according to Defendant Gordon's Declaration, she retired from her position at Electrograph in January 2007 – some two months after Plaintiff filed her EEOC Charge.  Gordon Decl. ¶ 2.  According to the Liendo Affidavit, however, it was "not possible" to search Defendant Gordon's local hard drive.  Liendo Aff. ¶ 7.  Liendo explains that:

> [C]omputers at Electrograph are not tagged or otherwise catalogued. Hence, after an employee's workspace is cleared, it is generally not possible to track a given computer to a specific prior employee.  In addition, once an employee leaves Electrograph, all data on the hard-drive of the computer assigned to such employee is removed.  For "executive" employees, this occurs as a matter of course within 30 days of the last day of employment.  For "non-executive" employees, data on the hard drive is removed immediately prior to the computer being re-assigned to another employee at the company.

*Id.*  Plaintiff argues that despite (1) Defendant Gordon's job responsibilities and the nature of the documents that would have come through her office, and (2) the fact that Defendant Gordon retired two months *after* Plaintiff's EEOC charge was filed, Defendants failed to prevent Defendant Gordon's hard drive from being erased.  Reply at 3-4.

Finally, a search of the hard drive of Plaintiff's own computer was also "not possible" for the same reason that a search of Defendant Gordon's computer could not be completed – after Plaintiff's employment with Electrograph ended, her hard drive was erased. *See* Liendo Decl. ¶ 7. Plaintiff maintains that "[d]espite the fact that Defendants should have known that documents needed to be retained prior to Ms. Scalera's termination, Defendants allowed all data, including all relevant emails, on Plaintiff's computer to be destroyed." Reply at 4.

In opposition, Defendants argue that "Electrograph had in place certain procedures and practices regarding computers and information stored on those computers." Defs.' Opp'n at 2. Specifically, Liendo states that all electronically stored information ("ESI") sent or received by Electrograph employees "was preserved on back-up tapes stored off-site." Liendo Decl. ¶ 3. According to Liendo, such backup tapes were only meant to be used for "disaster recovery purposes," and therefore "information on the tapes is accessible, but only after the tapes are 'restored.'" *Id.* Liendo states that ESI is backed up on a daily basis. *Id.* ¶ 4. In addition, as noted above, Electrograph employees can store documents on the hard drives of their individual computers and these documents "may or may not be backed up as 'ESI,' depending on whether the document was created on the network or only locally at a particular end-user's computer." *Id.* Liendo hired an outside vendor (RDA Enterprises) to review ESI backup tapes containing emails from the time period relevant to this litigation. *Id.* ¶¶ 9, 10. As noted above, RDA Enterprises was not able to successfully review the ESI backup tapes. *Id.* ¶ 10.

With respect to Plaintiff's arguments regarding the erasure of the hard drive on Defendant Gordon's computer, Defendants claim, essentially, that there were no relevant documents or emails on Defendant Gordon's hard drive. Defs.' Opp'n at 2. According to Defendant Gordon's

Declaration, every relevant email she received was printed out and placed in the employee's paper personnel file or was scanned onto the DocStar system. *See id.*; Gordon Decl. ¶ 3. Defendant Gordon stated that she copied Plaintiff's entire personnel file and provided it to Electrograph's General Counsel, Jeanne Raffiani. *Id.* ¶ 9; *see also* Decl. of Jeanne Raffiani ("Raffiani Decl.") ¶ 5 ("I obtained a full and complete copy of the HR file for Mary Scalera."). During oral argument, Defendants' counsel maintained that both the entire HR folder and the documents on the DocStar system were produced to Plaintiff.

Defendants admitted during oral argument that the three emails regarding Plaintiff's request for an accommodation in the form of a raised chair were produced by Plaintiff, but Defendants' counsel proffered as explanation the fact that those emails predated the start of Plaintiff's employment – apparently, the emails were exchanged after an offer of employment had been extended to Plaintiff but before she began work.

Finally, with respect to the erasure of Plaintiff's hard drive, Defendants contend that Plaintiff's employment was terminated on October 16, 2006 "and her computer was removed and erased thereafter" in accordance with Electrograph's general practices as noted  Defs.' Opp'n at 2; Liendo Aff. ¶ 7.  According to Defendants, "it is beyond question that more than thirty days expired prior to Electrograph [receiving] notice from the EEOC." *Id.*  Defendants maintain, therefore, that Plaintiff's computer contents were erased in conjunction with company practices before Electrograph ever received a communication from the EEOC triggering any duty to preserve.

### B.     Culpable State of Mind

Plaintiff contends that Defendants acted "at least" negligently and, in actuality, acted with gross negligence or recklessness.  Pls.' Mot. at 8-9.  Plaintiff contends that the following actions evidence Defendants having acted with a culpable state of mind: (1) Electrograph's General Counsel failed to issue a "formal litigation hold," (2) Defendants did not make any effort to stop the destruction of the contents of Defendant Gordon's hard drive after she retired in January 2007, (3) Defendants "did not suspend Electrograph's routine document destruction procedures," (4) "Electrograph made no effort to ensure that electronic documents and emails were stored separately from backup tapes," and (5) Defendants did not "ensure that documents on individual computers were retained."  *Id.* at 9.  According to Plaintiff, even if Electrograph's General Counsel "'believed' that she was in compliance with her duties to retain documents, Defendants still acted negligently in failing to retain documents."  Reply at 4.  During oral argument, Plaintiff further argued that Electrograph acted negligently by destroying accessible documents (such as those on Defendant Gordon's hard drive) before the company determined whether the backup system was functioning properly.

Defendants point to the Declaration of Electrograph's General Counsel, Jeanne Raffiani, which outlines the steps she took to preserve documents.  Upon her receipt of the EEOC Notice of Charge of Discrimination and attached Document Retention Notice, which she stated she received sometime in "late November or early December 2006," Raffiani spoke to several employees "who would have dealt with Ms. Scalera while she was employed at Electrograph," including Rose Ann Gordon and Erich Liendo.  Raffiani Decl. ¶¶ 2-4.  Raffiani informed each of those individuals "to retain any relevant documents."  *Id.* ¶ 4.  Raffiani also "collected copies of

documents from Human Resources, where [she] believed all relevant documents would be kept."
*Id.* Raffiani also learned from her conversations with Liendo "that all documents, including emails were backed up and that Electrograph did not have a document destruction policy. Knowing of these back-ups in place, [she] was confident that Electrograph had retained the necessary documents." *Id.* Defendants argue that "after the initial production of the Human Resources file to the EEOC, there was no request from EEOC for any additional documents, which would lead Electrograph to believe it had complied with its obligations to preserve documents." Defs.' Opp'n at 3.

### C. Relevance of Emails

Plaintiff reminds the Court that "'[r]elevance' in this context means that the destroyed evidence would have been favorable to the party's case." Pl.'s Mot. at 9 (citing *Toussie*, 2007 WL 4565160, at *8). Plaintiff argues initially that "if the Court finds that Defendants acted with gross negligence in failing to retain the documents, this alone is 'sufficient to permit' a conclusion of relevance." Reply at 5. However, Plaintiff asserts that even if the Court finds that Defendants acted negligently, there is sufficient extrinsic evidence to show that the destroyed emails would have been relevant to Plaintiff's case. Pl.'s Mot. at 10. According to Plaintiff, Defendants have already produced emails "which show that the company was aware of Ms. Scalera's disability and her need for accommodations," as well as emails regarding her July 2006 injury, her worker's compensation claim, and her termination. *Id.* Moreover, Plaintiff has produced emails "relating to Ms. Scalera's hire and an office chair to accommodate Ms. Scalera's disability." *Id.* According to Plaintiff, the destroyed emails would have shown that (1) Plaintiff made requests for an accommodation in the form of a handrail outside the side door, (2)

Defendants knew of Plaintiff's "limitations in walking and using stairs," which would have supported the obviousness of Plaintiff's disability and Defendants' resulting duty to accommodate her, and (3) Defendants had knowledge of Plaintiff's need for a handrail through additional emails regarding her July 2006 fall and subsequent worker's compensation correspondence. Reply at 5.

Defendants argue in opposition that the extrinsic evidence available does not establish that any destroyed emails would be "relevant" because the emails produced thus far do not support Plaintiff's claim but, rather, support Defendants' position. Defs.' Opp'n at 6. According to Defendants, the emails produced thus far show that "in circumstances where plaintiff requested an accommodation, Electrograph granted it." *Id.* Defendants contend that "there is no reason to believe that any 'other emails' would support plaintiff's position that additional requests [for accommodation] were ignored or denied." *Id.*

## IV.   LEGAL STANDARD

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 194 (S.D.N.Y. 2007) (quoting *Byrnie v. Town of Cromwell,* 243 F.3d 93, 107 (2d Cir. 2001)). A party seeking sanctions for spoliation must show:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002) (quoting

*Byrnie*, 243 F.3d at 107-12); *Toussie*, 2007 WL 4565160, at *6. "A party seeking sanctions for

spoliation has the burden of proving that the alleged spoliator had an obligation to preserve

evidence, acted culpably in destroying it, and that the evidence would have been relevant to the

aggrieved party's case." *Ramirez v. Pride Dev. & Constr. Corp.*, 244 F.R.D. 162, 164 (E.D.N.Y.

2007).

The court has the inherent power to impose sanctions for the spoliation of evidence,

even where there has been no explicit order requiring the production of the missing evidence.

*See Residential Funding,* 306 F.3d. at 106-07 ("Even in the absence of a discovery order, a court

may impose sanctions on a party for misconduct in discovery under its inherent power to manage

its own affairs"). "The determination of an appropriate sanction for spoliation, if any, is

confined to the sound discretion of the trial judge and is assessed on a case-by-case basis."

*Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted). A

sanction in the form of "an adverse inference instruction is an extreme sanction and should not be

imposed lightly." *Treppel v. Biovail Corp.,* 249 F.R.D. 111, 121 (S.D.N.Y. 2008).

## V. DISCUSSION

### A. Duty to Preserve

The Second Circuit has held that "[t]he obligation to preserve evidence arises when the

party has notice that the evidence is relevant to litigation or when a party should have known that

the evidence may be relevant to future litigation." *Fujitsu Ltd.*, 247 F.3d at 436 (citing *Kronisch

v. United States,* 150 F.3d 112, 126 (2d Cir. 1998)). Pursuant to this obligation, "anyone who

anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that

might be useful to an adversary." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). " 'While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.' " *Id.* (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y.1991)). This obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery. *See Barsoum v. N.Y.C. Hous. Auth.*, 202 F.R.D. 396, 399 (S.D.N.Y. 2001).

Courts have recognized "that there are many ways to preserve electronic data and a litigant is free to choose how to do so." *Toussie*, 2007 WL4565160, at *7 (citing *Zubulake*, 220 F.R.D. at 218). "However, once the duty to preserve attaches, at a minimum, a litigant is expected to 'suspend its routine document and retention/destruction policy and to put in place a litigation hold.'" *Id.* (quoting *Zubulake*, 220 F.R.D. at 218).

### 1. Defendants' Duty Arose at the Time the EEOC Charge Was Received

For the reasons outlined below, the Court finds that any duty to preserve relevant emails arose as of the time Defendants received Plaintiff's EEOC Charge.

#### a. *The Obviousness of Plaintiff's Disability*

Plaintiff's relies upon the rule articulated in *Brady v. Wal-Mart Stores, Inc.*, namely, that "[a]pplication of [the] general rule [that a request for an accommodation is a prerequisite to liability for failure to accommodate] is not warranted . . . where the disability is obvious or otherwise known to the employer without notice from the employee." 531 F.3d 127, 135 (2d Cir.

2008) (quoting *Felix v. N.Y. City Transit Auth.*, 154 F. Supp. 2d 640, 657 (S.D.N.Y. 2001))
(alteration in the original). Defendants have acknowledged that they were aware of Plaintiff's
"known disability" when they hired her. Defs.' Opp'n at 2. The court in *Brady* held that "an
employer has a duty to reasonably accommodate an employee's disability if the disability is
obvious – which is to say, if the employer knew or reasonably should have known that the
employee was disabled." *Brady*, 531 F.3d at 135. However, the court in *Brady* also wrestled
with the question of "what does accommodation mean, if the employee does not request specific
accommodation?" *Id.* The court found that "the ADA contemplates that employers will engage
in 'an "interactive process" [with their employees and in that way] work together to assess
whether an employee's disability can be reasonably accommodated.'" *Id.* (quoting *Jackan v. N.Y.
State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)) (alteration in the original).

  Here, the parties vigorously dispute whether Plaintiff actually requested of the company
the installation of a handrail on the steps outside the side door as an accommodation for her
disability. Plaintiff maintains that she made this specific request of Defendant Gordon after
starting employment in November of 2005. Defendant Gordon vehemently denies that Plaintiff
ever made such a request herself of through another employee. Gordon Decl. ¶ 6. In addition,
Defendant Gordon maintains that (1) when Plaintiff requested a desk chair higher than normal,
the accommodation was granted and the company purchased the chair that Plaintiff selected; (2)
the company accommodated Plaintiff's request to use the side entrance of the building when such
access was about to be restricted to emergency access only; and (3) the company permitted
Plaintiff to park in a designated visitor parking space to shorten her walk from her car to the
office. *Id.* ¶ 5. Plaintiff does not dispute these contentions. Moreover, Plaintiff's letter making a

claim for injuries and asserting negligence after her fall was sent by her attorney to the landlord of the building and not to Electrograph.

In view of all these circumstances, Plaintiff's argument that (1) because Defendants knew of Plaintiff's "disability" (the exact contours of which have not been defined), they knew or should have known that she needed the specific accommodation of a handrail at the side door, and (2) because they knew that her injury was caused by a lack of that handrail should have led Defendants to conclude that Plaintiff would bring a disability discrimination lawsuit against them, pushes the logic of such argument, in the Court's view, beyond the boundary of reasonableness.[3]

### b.    *The Filing of Plaintiff's Worker's Compensation Claim*

The Court finds that Plaintiff's filing of a worker's compensation claim did not put Defendants on sufficient notice that she would be commencing a disability discrimination lawsuit such that a duty to preserve evidence attached.  Initially, the Court does not find controlling Defendants' argument that Plaintiff's choice to bring a claim under worker's compensation implied that she would not be bringing a claim under the ADA.  *See, e.g.*, *Fowler v. Kohl's Dep't Stores, Inc.*, 2009 WL 2155481, at *3 (N.D.N.Y. July 16, 2009) ("Initially, the court notes that § 11 of the Workers' Compensation law is not an automatic bar on either ADA or NYHRL actions."); *Liss v. County of Nassau*, 425 F. Supp. 2d 335, 342 (E.D.N.Y. 2006) ("The New York

---

[3]    *Broccoli v. Echostar Communications Corporation*, 229 F.R.D. 506 (D. Md. 2005), which Plaintiff relies on to support her argument, is distinguishable.  In *Broccoli*, there was ample evidence that the plaintiff had complained about alleged sexual harassment during her employment and, thus, the court found that the defendant should have anticipated litigation as early as the time of the plaintiff's first internal complaint.  *Id.* at 510-11.  Here, as noted above, the evidence is in dispute whether Plaintiff actually requested the installation of a handrail as an accommodation for her disability.

State Worker's Compensation [law] does not bar an employee from suing his employer under federal civil rights laws.").  However, Plaintiff has not provided any case law to support her argument (and its rather broad implications) that an employer should reasonably anticipate a forthcoming disability discrimination action each time an employee files a worker's compensation claim in circumstances similar to those cited here.[4]  Moreover, nothing in the worker's compensation forms completed by Plaintiff contained any indication that she had requested a handrail and that the company had not provided one.  *See* Pl.'s Mot., Ex. A at 000000137, 139-143.

### c.    *The ADA Regulations*

Finally, Plaintiff contends that the regulations accompanying the ADA required Defendants to retain and preserve certain documents.  In *Byrnie v. Town of Cromwell*, 243 F.3d 93 (2d Cir. 2001), a rejected candidate for a high school teaching position sued the school system and board of education, alleging that they failed to hire her because of unlawful age and gender discrimination.  The plaintiff sought an adverse inference in connection with a summary judgment motion because the defendant had destroyed the ballot and ranking forms used by the screening committee members and notes made by the interviewers during the first and second round of interviews.  The record included testimony that these documents were destroyed sometime following the conclusion of the teacher job search as part of a routine process.

The Second Circuit found that the defendants were "required by federal regulations implementing Title VII and the Americans with Disabilities Act to retain all records pertaining to

---

[4]       None of the cases cited by Plaintiff deal with the notion that the filing of a worker's compensation claim should cause an employer to reasonably foresee subsequent employment discrimination litigation.

employment decisions for a period of two years." *Id.* at 108 (citing 29 C.F.R. § 1602.40).  The

court held that "where, as here, a party has violated an EEOC record-retention regulation, a

violation of that regulation can amount to a breach of duty necessary to justify a spoliation

inference in an employment discrimination case." *Id.* at 109.  The court found plaintiff had

demonstrated that the records were destroyed with a culpable state of mind (the defendant

admitted to the destruction as part of its regular policy) and that the documents were relevant to

the plaintiff's case, particularly because the interviewer's notes "would clarify what aspects of

[the plaintiff's] interview performance were reflected in the poor subjective evaluation he

received from the Search Committee and whether that evaluation adhered to permissible

criteria." *Id.*

      Here, the relevant records-retention regulation at issue in this matter provides:

> Any personnel or employment record made or kept by an employer
> (including but not necessarily limited to requests for reasonable
> accommodation . . . and other records having to do with hiring . . . or
> termination . . .) shall be preserved by the employer for a period of
> one year from the date of the making of the record or the personnel
> action involved, whichever occurs later.  In the case of involuntary
> termination of an employee, the personnel records of the individual
> terminated shall be kept for a period of one year from the date of
> termination.  Where a charge of discrimination has been filed . . .
> against an employer under [T]itle VII or the ADA, the respondent
> employer shall preserve all personnel records relevant to the charge
> or action until final disposition of the charge or the action . . . The
> date of final disposition of the charge or the action means the date of
> expiration of the statutory period within which the aggrieved person
> may bring an action in a U.S. District Court or, where an action is
> brought against an employer either by the aggrieved person, the
> Commission, or by the Attorney General, the date on which such
> litigation is terminated.

29 C.F.R. § 1602.14.  As noted above, there is a factual dispute as to whether Plaintiff actually requested an accommodation in the form of the installation of a handrail – although it appears undisputed that she requested other accommodations, including a raised chair, access to the building through the side door, and a parking slot.  However, it is unclear from the record whether Plaintiff's alleged requests for the installation of a handrail were made in writing.  The Amended Complaint recites three instances in which Plaintiff allegedly requested a handrail: (1) during a conversation with Joe Koos (who is described as the Director of Information Technology) which occurred prior to her hire; (2) in November 2005 when Plaintiff alleges that she "spoke with Rose Ann Gordon, Director of Human Resources, and made a request for an accommodation: Ms. Scalera represented that a handrail be installed on the side entrance," and (3) in March 2006, when, after not hearing from Defendant Gordon until that time, Plaintiff "again requested that Electrograph install a handrail on the side entrance."  Am. Compl. ¶¶ 36-42.  In her Declaration, Plaintiff does not specifically state whether she requested the handrail accommodation via email.  Rather, Plaintiff states that "[a]t times, I utilized my Electrograph email to communicate information about my disability and need for accommodations.  For example, I remember one email that I sent to Joe Koos regarding my continued use of the side entrance of the Electrograph building."  Scalera Decl. ¶5.  To the extent documents evidencing Plaintiff's alleged request for the installation of a handrail ever existed, they should have been preserved for a period of one year from the time the accommodation was requested.  Defendant Gordon says any written requests or hard-copied emails were produced by Defendants.

In addition, Plaintiff's EEOC Charge is dated November 7, 2006 and is marked received by the EEOC on November 13, 2006. Pl.'s Mot., Ex. D.[5] Defendants received it in late November or early December 2006. Raffiani Decl. ¶ 2. The EEOC issued a Notice of Determination on August 17, 2007 (*see* Am. Compl., Ex. 1) and sent out a Right to Sue Letter dated October 17, 2007 (*see* Am. Compl. ¶ 16). The Complaint in this action was filed within ninety days, on January 4, 2008. According to the regulations, therefore, upon their receipt of Plaintiff's EEOC Charge, Defendants were under an obligation to preserve Plaintiff's "personnel or employment record" as that term is defined in the regulation. The regulation also makes clear that Defendants' duty did not cease upon their provision of Plaintiff's HR file to the EEOC during their initial investigation.

### 2. Defendants' Breaches Of Their Duty to Preserve

#### a. *Plaintiff's Hard Drive*

Liendo stated that when executive employees left their employment with Electrograph, their computers were erased within thirty days, while the computers of non-executive employees were erased "immediately prior to the computer being re-assigned." Liendo Aff. ¶ 7. According to these representations, since Plaintiff's last day of employment at Electrograph was October 11, 2006, it follows that her computer was erased immediately or, in any event, by November 11, 2006.[6] As described above, the Defendants did not receive Plaintiff's EEOC Charge until at least

---

[5] As Plaintiff notes, the Amended Complaint states that the EEOC Charge was filed on January 29, 2007, but she now contends that this date is incorrect. *See* Am. Compl. ¶ 15; Pl.'s Mot. at 3 n.7.

[6] There is nothing in the record to suggest that Plaintiff's hard drive was erased more than thirty days after her termination.

November 13, 2006 (the date on which the EEOC received it).  There is no statement from Plaintiff that she served Defendants with a copy of the Charge at the same time she filed it with the EEOC.  More likely, Defendants received the Notice of Charge sometime thereafter when it was mailed to them by the EEOC.  Accordingly, the Court finds that as of the time Plaintiff's computer was erased, no duty to preserve the contents had attached.

### b. *Rose Ann Gordon's Hard Drive*

Rose Ann Gordon, in contrast, retired in January 2007 – at least one and perhaps two months after Defendants received Plaintiff's EEOC Charge.  *See* Gordon Decl. ¶ 2.  By the time Liendo conducted a search of relevant employees' hard drives, Defendant Gordon was no longer employed with Electrograph and, therefore, a search of her hard drive was "not possible." Liendo Aff. ¶ 7.  Based on the representations contained in the Liendo Affidavit, the Court presumes that the search was not possible because Defendant Gordon's hard drive had been wiped clean and her computer was re-assigned to another employee.  *See id.*  As noted above, Defendants' duty to preserve documents arose some time approximately in late November or early December of 2006, yet Defendant Gordon's computer was erased after her retirement in January 2007.  Thus, Defendants failed to preserve Defendant Gordon's hard drive and the emails/documents contained in it.

Defendants' argument that the destruction of Defendant Gordon's hard drive did not amount to a breach of a duty to preserve because Defendant Gordon printed all relevant documents and maintained them in Plaintiff's Human Resources file does not get them off the hook.  *See Treppel*, 233 F.R.D. at 372 n.4 ("[P]ermitting the downgrading of data to a less accessible form – which systematically hinders future discovery by making the recovery of

23

information more costly and burdensome – is a violation of the preservation obligation.").  As is discussed more fully below, Plaintiff's production of (and Defendants' failure to produce) emails regarding her requests for a raised chair as an accommodation raises an issue regarding Defendant Gordon's statement that all requests for accommodations came through Human Resources, were printed and/or scanned, and were saved in personnel files.  Plaintiff has the right to test the accuracy of Defendants' representations of facts and is not obligated to simply take Defendants' word for it that all relevant emails and documents that were on Defendant Gordon's hard drive actually made their way into Plaintiff's personnel file.

### c.  Other Emails

Plaintiff points to two partial emails that were produced by Defendants (Pl.'s Mot., Ex. A at 000000341, 342).  The first, dated December 19, 2005, contains the second page of a string email and shows at least part of a discussion among Electrograph employees about making a "reasonable accommodation" for Plaintiff in the form of permitting her to use a private bathroom located closer to her workspace.  *Id.* at 000000341.  The second, dated August 1, 2006, is a portion of an email chain that includes a message from Rose Ann Gordon to an individual named "Paul" regarding Plaintiff's FMLA leave.  *Id.* at 000000342.  The Court finds that, pursuant to the ADA regulation described above, these documents fall within the meaning of a "personnel or employment record" that should have been preserved for one year after their creation. *See* 29 C.F.R. § 1602.14 (defining "personnel or employment record" as including a request for a reasonable accommodation and other records relating to hiring, transfer, lay-off, and termination).  If these emails had been preserved in their entirety for the requisite one year period, they would still have been in existence at the time that Defendants received Plaintiff's

EEOC Charge. As noted above, once Defendants' received notice of Plaintiff's EEOC Charge the ADA regulations would have required Defendants to preserve these documents "until the final disposition of the charge or the action," which would include the pendency of this litigation. *See* 29 C.F.R. § 1602.14. Defendants did not keep copies of these emails in their entirety and, thus, failed to preserve them.

With respect to the emails produced by Plaintiff (but not Defendants) regarding Plaintiff's request for a raised chair as an accommodation of her physical condition (Pl.'s Mot., Ex. D at 00635-637), the Court finds Defendants' argument that these emails were not produced because they were created before Plaintiff began working at Electrograph to be unconvincing. Defendants rely almost exclusively on Defendant Gordon's Declaration which states that "[a]ny employee request for accommodation for any reason had to made through Human Resources" and that "[a]ll materials received via email . . . in Human Resources were promptly printed and placed in the appropriate employee's file" (*see* Gordon Decl. ¶ 3) – a declaration that is undermined by the emails Plaintiff produced. The emails produced by Plaintiff clearly reflect an employee request for an accommodation. The Court is left to conclude, then, that either (a) this request did not go through Human Resources[7] or (b) the request did go through Human Resources but the email was never printed out and placed in Plaintiff's file.

Putting aside the fact that these circumstances call into question the accuracy of Defendants' assertions regarding the completeness of the Human Resources file that was

---

[7] Two of the emails reflect an exchange between Plaintiff and Joe Koos regarding her request for a raised chair. *See* Pl.'s Mot., Ex. D at 00635, 00637. Elaine Capel is copied on that email. The third email shows an exchanged between Plaintiff and Carol Dinow. *Id.* at 00636. It is unclear whether Koos, Capel, or Dinow were considered part of the Human Resources department.

produced, the Court finds that the ADA regulations would have required Defendants to preserve these emails for one year from the time they were created, namely, in September 2005. Even if Defendants had done so, the obligation to preserve these emails would have expired in September 2006 – a month and a half before Plaintiff's EEOC Charge was filed. Therefore, Defendants have not breached any duty by failing to preserve these documents.

### B. <u>Culpable State of Mind</u>

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." *WRT Sec. Litig.,* 246 F.R.D. at 195. "The preservation obligation runs first to counsel, who has a 'duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'" *Chan v. Triple 8 Palace, Inc.*, 2005 WL 1925579, at *6 (S.D.N.Y. Aug. 11, 2005) (quoting *Turner*, 142 F.R.D. at 73). "The culpable state of mind requirement is satisfied in this circuit by a showing of ordinary negligence." *In re NTL, Inc. Securities Litig. (Gordon Partners v. Blumenthal)*, 244 F.R.D. 179, 198 (S.D.N.Y. Jan. 30, 2007) (quoting *Phoenix Four, Inc. v. Strategic Res. Corp.*, 2006 WL 1409413, at *4 (S.D.N.Y. May 23, 2006)) (quotation marks omitted).

General Counsel Raffiani stated that she received Plaintiff's EEOC Charge in "late November or early December 2006," and "[a]fter reviewing the EEOC documents on retention requirements I spoke to those employees who would have dealt with Ms. Scalera while she was employed at Electrograph." Raffiani Decl. ¶¶ 2, 4. In particular, Raffiani "spoke to" six

employees: Defendant Rose Ann Gordon, Defendant Kathy Koziol, Defendant Alan Smith,[8] Paul Batterson, Carol Dinow, and Erich Liendo. *Id.* ¶ 4. Raffiani told those employees "to retain any relevant documents." *Id.* Next, she "collected copies of documents from Human Resources, where [she] believed all relevant documents would be kept." *Id.* Finally, Raffiani learned from Electrograph's IT employees (including Liendo) that "all documents, including emails were backed up and that Electrograph did not have a document destruction policy. Knowing of these back-ups in place, I was confident that Electrograph had retained the necessary documents." *Id.*

Liendo stated that he became aware of "the above-captioned litigation" in "early 2007," and although he does not so state, the Court presumes that he learned this through Attorney Raffiani. *See* Liendo Aff. ¶ 3; *see also* Raffiani Decl. ¶ 4. Liendo searched "the hard drives for the computers assigned to the individually-named defendants who are currently employed by Electrograph (Kathy Koziol and Alan Smith) looking specifically for documents containing the specific word 'Scalera.'" Liendo Aff. ¶ 5. Importantly, Liendo ran this search "[i]n order to determine whether Electrograph might be in possession of documents relevant to the case, but not stored as ESI." *Id.* Apparently, Liendo found such documents because he stated that "[c]opies of any responsive documents located were forwarded to counsel." *Id.* Again, these statements tend to undercut Defendants' general assertions that all emails would have been stored on backup tapes.

Liendo also searched the hard drive of an employee named Elaine Capel, who was specifically identified in Plaintiff's document requests, and forwarded responsive documents to

---

[8] Gordon, Koziol, and Smith, while Defendants in this federal litigation, do not appear to have been named as respondents in Plaintiff's EEOC Charge. *See* Am. Compl., Ex. 1.

counsel. *Id.* ¶ 6. Liendo does not state that he (or anyone else) searched the hard drives of Carol Dinow or Paul Batterson – two employees whom Raffiani felt were important enough to "speak to" and advise to retain documents. *See* Raffiani Decl. ¶ 4. And, as noted above, by the time Liendo commenced the process of searching hard drives, Defendant Gordon was no longer employed by Electrograph and so her computer had been reassigned and her hard drive had been erased. *See* Liendo Aff. ¶ 7.

Given all of these facts, I find that Defendants acted in a manner that was negligent. Taking the Raffiani Declaration and Liendo Affirmation together, the Court concludes that no one at Electrograph took any active steps to preserve electronic documents until early 2007 – almost two months after Plaintiff's EEOC Charge was filed and Defendants' duty to preserve attached. In particular, searches of key employees' hard drives were either never completed at all or were not completed for some time after the EEOC Charge was received. As evidence of this, Raffiani stated that she spoke with Defendant Gordon in person to advise her to preserve documents but Liendo stated that by the time he began searching hard drives, Defendant Gordon was no longer an Electrograph employee. In addition, although Raffiani considered Carol Dinow and Paul Batterson to be important enough to the litigation to speak to in person, for whatever reason, the message was never communicated to the IT department to search the hard drives of Dinow and Batterson's computers. Moreover, Liendo's Affirmation demonstrates that there was some information located on the hard drives that were searched, which data was not backed up as ESI. Thus, the Court recognizes the potential that Defendants' failure to search the hard drives of Defendant Gordon, Dinow and Batterson may have resulted in the loss of some otherwise-

recoverable information. Finally, although Raffiani "spoke to" several key employees, no formal written litigation hold was ever implemented.

After reviewing these facts as well as the relevant case law, the Court concludes that Defendants acted negligently but not with gross negligence. *See, e.g.*, *Metrokane, Inc. v. Built NY, Inc.*, 2008 WL 4185865, at **4-5 (S.D.N.Y. Sept. 3, 2008) (after considering evidence that defendant destroyed emails after it became aware of potential for litigation, and given the defendant's "complete silence . . . as to why it failed to produce the e-mails in question, we infer at a minimum that it was negligent either in failing to produce documents available to it or in failing to preserve documents that it was obliged to safeguard," but the court declined to "find any greater degree of fault").

"A party's discovery obligations do not end with the implementation of a 'litigation hold' – to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004). The court in *Zubulake* set forth several steps that counsel should take "to ensure compliance with the preservation obligation": (1) issue a litigation hold at the outset of litigation or whenever litigation is reasonably anticipated, (2) clearly communicate the preservation duty to "key players," and (3) "instruct all employees to produce electronic copies of the their relevant active files" and "separate relevant backup tapes from others." *Id.* at 433-34. As the *Zubulake* court noted, "[o]ne of the primary reasons that electronic data is lost is ineffective communication with information technology personnel." *Id.* at 434.

Here, although Raffiani communicated the preservation duty verbally to most of the "key players," there was no effective timely communication with Liendo and others in the IT department. In addition, had clearer instructions been provided, Defendant Gordon's hard drive would have been searched (rather than erased) at or before the time she retired. More effective communication might also have led Raffiani to learn from Liendo that individuals could have information on their hard drives that was not backed up as ESI. In that event, Raffiani would likely have instructed those six employees with whom she spoke to "produce electronic copies of all their relevant active files," rather than simply rely on the ESI backup system. *See id.* at 434. Finally, if specific information had been communicated that Dinow and Batterson were also considered "key employees" in this instance, Liendo could have searched their hard drives as well.

In sum, the Court finds that the company's omissions and ineffective communication directly resulted in the loss of some electronic data, though that data was likely very limited based upon the specific circumstances concerning the accommodations purportedly requested by Plaintiff. These actions and omissions constitute negligence.

### C.    Relevance

"[A] party seeking sanctions for spoliation must demonstrate that the evidence destroyed was 'relevant' to its claims or defenses. At least where more severe sanctions are at issue, this means that the moving party must show that the lost information would have been favorable to it." *Chan*, 2005 WL 1925579, at *7. In the context of a motion seeking sanctions in the form of an adverse inference, the term "relevance" "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence. Rather, the party seeking an adverse inference

30

must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." *Residential Funding*, 306 F.3d at 108-09 (quotation marks, citations, and alterations omitted); *see also Toussie*, 2007 WL 4565160, at *8 ("In other words, the plaintiffs here must present extrinsic evidence tending to show that the destroyed e-mails would have been favorable to their case.").

Relevance may be established in one of two ways. First, relevance "may be inferred if the spoliator is shown to have a sufficiently culpable state of mind." *Chan*, 2005 WL 1925579, at *8 (noting that bad faith or gross negligence, standing alone, can support a finding of relevance as a matter of law). In the alternative, "the moving party may submit extrinsic evidence tending to demonstrate that the missing evidence would have been favorable to it." *Id.*

Plaintiff contends that relevance has been established as a matter of law because Defendants have acted with gross negligence. However, the Court has determined that while Defendants acted negligently, their actions and omissions do not amount to gross negligence. In any event, the Court does not find that Defendants' conduct here amounts to a finding of relevance as a matter of law. *See id.* Obviously, Electrograph's General Counsel did not issue a formal litigation hold, but she did speak about preserving documents to key employees who would likely have had dealings with Plaintiff's request(s) for accommodation. Unfortunately, that approach was not timely expanded, as it should have been, to personnel in the IT Department as soon as the EEOC Charge was received. And, as noted above, had Raffiani communicated more quickly and effectively with both the key employees and with Liendo, certain electronic data might not have been lost as part of the destruction of Defendant Gordon's hard drive or the

failure to search Dinow or Batterson's hard drive. The Court finds that "[t]his conduct, however, does not rise to the egregious level seen in cases where relevance is determined as a matter of law." *Toussie*, 2007 WL 4565160, at *8; *compare NTL Sec. Litig.*, 244 F.R.D. at 198 (finding relevance as a matter of law when not all key employees received the litigation hold memoranda, employees were not reminded to preserve documents, the IT system at issue was outsourced and no litigation hold instructions were ever conveyed); *Doe v. Norwalk Cmty. Coll.*, 248 F.R.D. 372, 380 (D. Conn. 2007) (finding relevance as a matter of law when defendants did not stop the routine destruction of backup tapes after duty to preserve attached, there appeared to have been evidence tampering, and defendants destroyed key witness's computer one month after litigation filed). What the record does show here is that Defendants' total reliance on the backup tape system was short-sighted.

I further find that Plaintiff has not submitted extrinsic evidence tending to demonstrate that the destroyed emails would have been favorable to her case. The emails that Plaintiff relies on as extrinsic evidence are, if anything, more favorable to Defendants' position. *See* Pl.'s Mot., Ex. A at 000000341, Ex. C, Ex. 00635-637. These emails each show that Defendants provided Plaintiff with reasonable accommodations – by allowing her to use a different bathroom (Ex. A at 000000341), by permitting her to use the side door (Ex. C), and by purchasing a raised chair (Ex D 00635-637). Plaintiff has produced nothing, aside from speculation, as support for her claim that the destroyed emails would have shown that Plaintiff requested the installation of the handrail, that Defendants knew about Plaintiff's difficulty in maneuvering the steps outside the side door, or that Defendants knew that Plaintiff needed a handrail.

**V.    Conclusion**

Thus, while Defendants have unquestionably breached a duty to preserve emails in this case, Plaintiff has ultimately failed to demonstrate that any destroyed emails would have been favorable to her position.  Accordingly, Plaintiff's motion for sanctions in the form of an adverse inference instruction is DENIED.

The parties are directed to participate in a telephone conference with the Court on October 15, 2009 at 2 p.m. to discuss completion of the pre-trial phase of this case.  Plaintiff's counsel is requested to initiate the call to Chambers with Defendants' counsel on the line.

**SO ORDERED.**

Dated: Central Islip, New York
        September 29, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge